UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DAVID LYN SHUE, | * |
|  | * |
| Plaintiff, | * |
|  | * |
| v. | * |
|  | * Civil Action No. 23-cv-12152-ADB |
|  | * |
| JMAC DISTRIBUTION, LLC, LOSS PREVENTION SERVICES, LLC, and BRIDGECREST ACCEPTANCE CORPORATION, | * |
|  | * |
| Defendants. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

     David Lyn Shue ("Shue" or "Plaintiff") filed this action against JMAC Distribution, LLC ("JMAC"), Loss Prevention Services, LLC ("LPS"), and Bridgecrest Acceptance Corporation ("Bridgecrest") (collectively, "Defendants"), alleging that Shue's vehicle was unlawfully repossessed in violation of Massachusetts law and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). [ECF No. 1 ("Complaint" or "Compl.") at 1–2].[1] Before the Court is Defendant JMAC's motion to dismiss the Complaint as against it for failure to state a claim

---

[1] Count I alleges a violation of the federal Fair Debt Collection Practices Act, [Compl. ¶¶ 31–41]; Counts II, III and IV respectively allege Breach of the Peace Repossession, [id. ¶¶ 42–46], Unfair and Deceptive Practices in Trade or Commerce, [id. ¶¶ 47–52], and Conversion, [id. ¶¶ 53–57], all under Massachusetts law.

pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 15]. For the reasons set forth below, JMAC's motion is <u>DENIED</u>.

## I. BACKGROUND

### A. Factual Background

The following facts are drawn primarily from the Complaint, the well-pled allegations of which are taken as true for purposes of evaluating JMAC's motion to dismiss. See <u>Ruivo v. Wells Fargo Bank</u>, 766 F.3d 87, 90 (1st Cir. 2014).

Plaintiff Shue, a resident and citizen of Massachusetts, financed a 2013 BMW 335i (the "BMW") through a loan from Bridgecrest.[2] [Compl. ¶¶ 5, 14]. Shue contends that the vehicle had many mechanical issues and that having to pay for repairs resulted in him falling behind on his Bridgecrest loan payments. [Id. ¶¶ 17, 18]. Prior to March 6, 2023, Bridgecrest contracted with LPS, a company "specializ[ing] in nationwide recovery management, skip tracing and impound services on behalf of lenders and creditors," [id. ¶ 9], to repossess the BMW. In turn, LPS further subcontracted the repossession to JMAC, a "vehicle transport, storage, and repossession company," [ECF No. 16 at 1; Compl. ¶ 6], who was to carry out the actual repossession, [Compl. ¶¶ 19–21].

On March 6, 2023, at approximately 7:00 p.m., Shue noticed a JMAC tow truck near his parked vehicle. [Compl. ¶ 22]. Shue asked the JMAC tow operator ("JMAC representative") what he was doing, and the JMAC representative told Shue he was repossessing the BMW. [Id. ¶ 23]. Shue told the JMAC representative to "stop the repossession and that what he was doing was illegal," [id. ¶ 24], but the JMAC representative continued the repossession, [id. ¶ 25]. Shue

---

[2] The parties' filings do not provide the exact date of the loan from Bridgecrest to Shue, but the date is not material to this motion. See generally [Compl.; ECF No. 16; ECF No. 19 ("Opp'n")].

then sat down in the BMW "in order to physically prevent [JMAC]'s representative from taking the vehicle." [Id.]. The JMAC representative then hooked the BMW up to the tow truck and lifted the car with Shue inside of it "so that he could install dollies on the vehicle." [Id. ¶ 26]. Then, unable to complete the repossession with Shue still physically in the BMW, the JMAC representative called the police. [Id. ¶ 27]. The police arrived on the scene, spoke with the JMAC representative, and told Shue that if he did not get out of the BMW, he would be arrested for breaching the peace and face possible felony charges. [Id. ¶ 28]. Shue protested, claiming that JMAC's conduct was illegal, but nonetheless got out of the car. See [id. ¶¶ 28–30]. The JMAC representative then completed the repossession. See [id.].

      **B.**      **Procedural History**

On September 21, 2023, Shue filed the Complaint against the Defendants. [Compl.]. On November 20, 2023, JMAC moved to dismiss the Complaint for failure to state a claim, [ECF No. 15], and Shue opposed on December 4, 2023. [Opp'n].

**II.**      **DISCUSSION**

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pled facts, analyze those facts in the light most hospitable to the Plaintiff's theory, and draw all reasonable inferences from those facts in favor of Plaintiff. See United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). The facts alleged must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A.      Counts I and II: FDCPA § 1692f(6) and Breach of Peace

In order "[t]o establish a claim under the FDCPA, [Shue] must show that (1) [he] was the object of a collection activity arising from consumer debt, (2) [JMAC] [is] [a] debt collector[] as defined by the FDCPA, and (3) [JMAC] engaged in an act or omission prohibited by the FDCPA."[3]  Neathery v. Lucky 13 Recovery Inc., No. 22-cv-10769, 2023 WL 7924149, at *2 (D. Mass. Nov. 16, 2023).  The parties seemingly agree that Shue satisfies the first prong, see [Compl. ¶¶ 15–16; ECF No. 16 at 6–7], and that JMAC, because it was subcontracted by a debt collector to repossess the BMW, is subject to the FDCPA pursuant to § 1692f(6), thus satisfying the second prong.  See 15 U.S.C. § 1692f(6); [ECF No. 16 at 4–5; Opp'n at 9]; Neathery, 2023 WL 7924149, at *2 ("At least six circuit courts have held that a person whose business has the principal purpose of enforcing security interests . . . is subject . . . to § 1692f(6), even if that person would not otherwise satisfy the definition of a debt collector." (internal quotation marks and citation omitted)).

---

[3] The FDCPA violation Shue alleges in Count I relies on the same Massachusetts state law violation alleged in Count II, see Mass. Gen. Laws ch. 106, § 9-609, and the Court therefore considers the two counts together.  See [Compl. ¶¶ 31–46]; see also Neathery, 2023 WL 7924149, at *3 ("[R]epossession rights are governed by the relevant state's property and contract law, so in the absence of an FDCPA-specific rule, we must look to state law to determine whether a repossessor had a present right to possess the property at the time it was seized."); Vantu v. Echo Recovery, L.L.C., 85 F. Supp. 3d 939, 943 (N.D. Ohio 2015) ("In general, a security-interest enforcer loses its right to present possession of the collateral if it breaches the peace."); Clark v. PAR, Inc., No. 15-cv-02322, 2015 WL 13781846 (C.D. Cal. July 22, 2015) ("[A] security-interest enforcer, and even a secured party, can lose their 'present right" to possession of collateral through actions taken during repossession.'" (quoting Pflueger v. Auto Fin. Group, Inc., No. 97-cv-09499, 1999 WL 33740813, at *3 (C.D. Cal. Apr. 26, 1999))).

As to the third prong, Shue alleges that, when it repossessed the BMW on March 6, JMAC violated § 1692f(6)(A) of the FDCPA[4] [Opp'n at 9–10], which prohibits:

> [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
>
> > (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; or
> >
> > . . .
> >
> > (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C § 1692f(6)(A), (C) (emphasis added); [Compl. ¶ 34].[5]

Because the FDCPA "does not define the phrase 'present right to possession,'" Richards v. PAR, Inc., 954 F.3d 965, 968, "[r]epossession rights are governed by the relevant state's property and contract law." Neathery, 2023 WL 7924149, at *3 (citing Richards, 954 F.3d at 968); see also Speleos v. BAC Home Loans Servicing, L.P., 824 F. Supp. 2d 226, 233 (D. Mass. 2011) ("A court should look to state law requirements to determine whether there was a present right to possession under the FDCPA."); Alexander v. Blackhawk Recovery & Investigation, L.L.C., 731 F. Supp. 2d 674, 679 (E.D. Mich. 2010) ("Courts presented with the issue of determining whether a repossession agency has violated § 1692f(6) look to the applicable state self-help repossession statute which identifies the circumstances under which an enforcer of a security interest does not have a present right to the collateral at issue."). Relevant in

---

[4] Neither party appears to dispute that when JMAC set out to repossess the BMW, it had the requisite present possessory right to the BMW. [ECF No. 16 at 6; Opp'n at 10, 13]. Rather, Shue avers that JMAC lost that possessory right when it seized the vehicle. [Opp'n at 10].

[5] Although Shue also cites to 15 U.S.C § 1692f(6)(C), the gravamen of Shue's argument is that the peace was breached during JMAC's repossession action, and, as such, the Court only considers whether Shue plausibly pled a claim under § 1692f(6)(A). See [Opp'n at 10, 18].

Massachusetts are the Uniform Commercial Code ("UCC"), as codified in Mass. Gen. Laws ch. 106, § 9-609, and the Motor Vehicle Retail Installment Sales Act ("RISA"), ch. 255B, § 20B(a).[6] See Neathery, 2023 WL 7924149, at *3.

Mass. Gen. Laws ch. 106, § 9-609b(2) allows for self-help repossession, but only "if it proceeds without breach of the peace." Mass. Gen. Laws ch. 106, § 9-609b(2). Because the statute does not define "breach of peace," "most courts simply resolve breach-of-the-peace cases without adopting a definition for the term itself, instead focusing on the specific factual circumstances of each case." Neathery, 2023 WL 7924149, at *4 (quoting Droge v. AAAA Two Star Towing, Inc., 468 P.3d 862, 871 (Nev. App. 2020)); Rivera v. Dealer Funding, LLC, 178 F. Supp. 3d 272, 278 (E.D. Pa. 2016) ("Most jurisdictions make determinations of what constitutes a breach of the peace on a case by case basis. Although their findings vary, courts generally look to the following factors to determine if there was a breach of the peace: the use of law enforcement; violence or threats of violence; trespass; verbal confrontation; and disturbance to third parties.").[7]

Here, Shue alleges that JMAC breached the peace by "repossessing [] [his] vehicle over [his] objection . . . , recklessly lifting up that vehicle with [him] inside of it, and in involving the

---

[6] "The RISA provides that a secured creditor may take possession of collateral 'without a prior hearing only if ... possession can be obtained . . . without breach of peace.'" Neathery, 2023 WL 7924149, at *3 (quoting Mass. Gen. Laws ch. 255B, § 20B(a)). The analysis under the RISA is the same as under Mass. Gen. Laws ch. 106, § 9-609, as they both require repossession to occur without breach of the peace. See Neathery, 2023 WL 7924149, at *3.

[7] The Court notes the limited number of cases in Massachusetts concerning the breach of the peace in the repossession context and recognizes that guidance from other jurisdictions is "especially relevant in the context of the UCC, which seeks to make uniform the law among the various jurisdictions." See Reading Co–Operative Bank v. Suffolk Constr. Co., Inc., 984 N.E.2d 776, 782 n.7 (Mass. 2013) (citation and internal quotations omitted).

police in order to effectuate the repossession." [Compl. ¶¶ 36, 44; ECF No. 16 at 8]. Contrary to JMAC's suggestion that it did not act "in a manner which would have a disturbing effect on the public,"[8] [ECF No. 16 at 8], the Court finds that Shue has pled sufficient facts to plausibly state a claim that JMAC's repossession breached the peace in violation of Mass. Gen. Laws ch. 106, § 9-609, as alleged in Count II.

Although courts are uncertain about whether repossession over a debtor's explicit objections is enough to constitute a breach of the peace, the Court is satisfied that hooking the BMW to the tow truck and proceeding to lift it up, with Shue in the car, more than adequately denote such a breach for present purposes. See [Compl. ¶ 26]; compare McCarthy v. First Credit Resources, Inc., No. 23-cv-00824, 2023 WL 7926274, at *2 (W.D. Pa. Nov. 16, 2023) (oral objections of the owner, without more, are insufficient to find a breach of the peace), with Gonzalez v. VJ Wood Recovery, LLC, No. 5:23-cv-01599, 2024 WL 1321074, at *3–4 (E.D. Pa. Mar. 27, 2024) (noting that a verbal objection may constitute a breach of the peace). JMAC's actions plainly constitute the kind of hazard resulting from confrontation during self-help

---

[8] JMAC relies primarily on two cases, Commonwealth v. Orlando, 359 N.E.2d 310 (Mass. 1977) and Commonwealth v. Baez, 678 N.E.2d 1335 (Mass. App. Ct. 1977), which deal with disturbance of the peace in the criminal context, specifically when a person may be arrested by a police officer for disturbing the peace. See 359 N.E.2d at 312 (1977); 678 N.E.2d at 1338 (1997). The Court is not convinced by JMAC's contention that a criminal disturbance of the peace is substantially synonymous with a civil claim for breach of the peace in a repossession action. [ECF No. 16 at 7–8]. The Court therefore looks to relevant case law in the latter context. See infra.

Second, JMAC argues that to the extent that the peace was breached, Shue was the one who unilaterally initiated and escalated the interaction, and that the repossessor should not be held responsible for what the Plaintiff did. [ECF No. 16 at 8–11]. Because the Court finds that hooking the BMW to the tow truck and lifting it up even when Shue sat in the car plausibly constitutes a breach of the peace, it need not determine whether Shue's verbal and physical objections might have also amounted to a breach. See infra; see also Gonzalez v. VJ Wood Recovery, LLC, No. 5:23-cv-01599, 2024 WL 1321074, at *4 (E.D. Pa. Mar. 27, 2024).

7

repossession that the UCC seeks to avoid, and which courts have determined are dangerous and constitute a breach of the peace.  See Hansen v. Santander Bank, N.A., 689 F. Supp. 3d 679, 690–91 (D. Minn. 2023) (finding that plaintiff adequately alleged a breach of the peace when she claimed that defendants lifted up her car with her in it); Thomas v. Gen. Motors Fin. Co., Inc., No. 19-cv-1418, 2020 WL 8771387, at *4 (W.D. Tex. Mar. 18, 2020) (denying motion to dismiss where plaintiff alleged that defendant "did not have a 'present right' to possession" when it towed her vehicle while she was inside of it, thereby committing a breach of the peace); Smith v. AFS Acceptance, LLC, No. 11-cv-5340, 2012 WL 1969415, at *4 (N.D. Ill. June 1, 2012) (denying motion to dismiss a § 1692f(6) claim after finding a breach of the peace was sufficiently pled where plaintiffs jumped into the vehicle while it was being towed and defendant's employees continued to tow the vehicle); Nieves v. Able Auto Adjusters, No. 18-cv-8262, 2019 WL 13043035, at *1 (C.D. Cal. Mar. 12, 2019) (holding that "a motion to dismiss cannot be granted on the grounds that no breach of the peace occurred as a matter of law" because "attempting to repossess a car while an occupant is known to be in it" could be a breach of the peace).

Additionally, calling in law enforcement to aid in self-help repossession, as JMAC's representative did, might independently constitute a breach of the peace.  In re 53 Foot Trawler Pegasus, No. 08-cv-00117, 2008 WL 4938345, at *5 (M.D. Fla. Nov. 18, 2008) ("If the strong arm of the law is needed, then the creditor must secure judicial intervention when a police officer is carrying out or sanctioning the repossession."); Albertorio-Santiago v. Reliable Fin. Servs., 612 F. Supp. 2d 159, 170 (D.P.R. 2009) ("If law enforcement is needed, then a breach of the peace has occurred, and the creditor must secure judicial intervention to carry out the repossession.").  Accordingly, the Court finds that Plaintiff sufficiently alleges facts that make

out a plausible claim that the peace was breached during JMAC's repossession attempt, and, consequently, a violation of M.G.L. c. 106, § 9-609 and 15 U.S.C. 1692(f)(6)(A).

### B.      Count III: Unfair and Deceptive Practices in Trade or Commerce

Shue further contends that JMAC's actions violated Chapter 93A by engaging in unfair methods of competition and "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 9; [Compl. ¶¶ 47–52]. JMAC's argument that it had present possessory right to the BMW, [ECF No. 16 at 12], is unavailing based on the same breach of the peace analysis discussed supra. See Richards, 954 F.3d at 970. Additionally, because Shue has adequately pled a violation of the FDCPA, see supra, he has sufficiently alleged that there was "trade or commerce" between the parties. See, e.g., Espinosa v. Metcalf, No. 21-cv-10356, 2022 WL 16554726, at *6 (D. Mass. Oct. 31, 2022) ("Where a defendant engages in conduct which [goes] beyond seizure and violated the FDCPA, courts have found a basis for a c. 93A claim including the requisite 'trade or commerce' to exist." (internal quotation marks omitted)). As such, Shue has sufficiently pled Count III.

### C.      Count IV: Conversion

To establish a claim for conversion, a plaintiff must prove that the defendant "exercised dominion over the personal property of another, without right, and thereby deprived the rightful owner of its use and enjoyment." Espinosa, 2022 WL 16554726, at *7 (quoting In re Hilson, 863 N.E.2d 483, 491 (Mass. 2007)).[9] Here, the Court is satisfied that because Shue plausibly

---

[9] Separately, the Court notes that JMAC's argument that it cannot be held liable for conversion because it did not know that Bridgecrest lacked a possessory right to the vehicle, [ECF No. 16 at 14], obfuscates the fact that it was JMAC's actions that allegedly led to a breach of the peace, making its knowledge of Bridgecrest's situation irrelevant. See supra; see also Espinosa, 2022 WL 16554726, at *7 ("To the extent that Defendants argue that they reasonably believed that

9

alleges that JMAC breached the peace, the repossession company "exercised dominion" over the vehicle without right.[10]  See Kelley v. LaForce, 288 F.3d 1, 11–12 (1st Cir. 2002) ("The tort of conversion requires an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession." (emphasis added) (citing Third Nat'l Bank v. Continental Ins. Co., 446 N.E.2d 380, 383 (Mass. 1983)); cf. Hyman v. Cap. One Auto Fin., 306 F. Supp. 3d 756, 765–66 (W.D. Pa. 2018) (finding that conversion was plausibly asserted because, in part, "[p]laintiff's well-pleaded facts g[a]ve rise to a reasonable inference that the 'repo man' committed a breach of the peace," thereby nullifying his right to possess the vehicle) (applying Pennsylvania law).

### III.  CONCLUSION

For the reasons set forth above, Defendant JMAC's motion to dismiss, [ECF No. 15], is DENIED.

**SO ORDERED.**

| | |
|---|---|
| August 16, 2024 | /s/ Allison D. Burroughs<br>ALLISON D. BURROUGHS<br>U.S. DISTRICT JUDGE |

---

they had a legal right to possess either vehicle, the law is clear—good faith is no defense to conversion" (citing Kelley, 288 F.3d at 12)).

[10] To the extent that JMAC disputes that Shue was the rightful owner of the BMW due to the loan default, this does not invalidate Shue's conversion claim.  See Mancuso v. Gen. Motors Acceptance Corp., 1993 Mass. App. Div. 136 (Dist. Ct. 1993) (finding that plaintiff whose car was wrongfully repossessed had standing to pursue a claim for conversion); see also Espinosa, 575 F. Supp. 3d at 262 ("[Repossessor] cannot defend against [conversion] liability by asserting legal title to the vehicle [due to default].").